IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KEITH MANUFACTURING, CO., | Case No. 3:15-cv-2008-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **LARRY D. BUTTERFIELD**, | |
| Defendant. | |

Bruce A. Kaser, VANTAGE LAW, PLLC, 420 Front Street, Issaquah, WA 98027; Gordon W. Stewart, STEWART LAW OFFICES, 2145 Wells Street, Suite 105, Wailuku, HI 96793. Of Attorneys for Plaintiff.

Shawn J. Kolitch, KOLISCH HARTWELL, PC, 200 Pacific Building, 520 SW Yamhill Street, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Keith Manufacturing Co. ("Keith" or "Plaintiff") brings this lawsuit against its former employee, Defendant Larry D. Butterfield ("Butterfield" or "Defendant"). Keith asserts that during Butterfield's employment with Keith, Butterfield filed a patent application that led to the issuance of U.S. Patent No. 9,126,520 ("the '520 patent"). According to Keith, the patent application was based on inventions made in cooperation with one or more of Keith's employees, in the course of Butterfield's employment, and using Keith's trade secrets. Keith

PAGE 1 – OPINION AND ORDER

further asserts that in violation of his employment contract, Butterfield sent Keith a demand letter threatening to sue Keith for patent infringement if the company did not withdraw certain products from the market.

Keith alleges five claims against Butterfield: (1) a declaratory judgment of noninfringement of the '520 patent; (2) a declaratory judgment of invalidity of the '520 patent; (3) breach of contract; (4) trade secret misappropriation; and (5) correction of inventorship of the '520 patent to add one or more of Keith's employees as named inventors. Butterfield moves to dismiss all of Keith's claims other than the claim for correction of inventorship. Butterfield also moves to extend the time for him to answer Keith's claim for correction of inventorship until 14 days after the Court rules on the present motion to dismiss. For the following reasons, Butterfield's motion to dismiss is granted in part and denied in part. Butterfield's motion to extend the time to answer Keith's claim for correction of inventorship is granted.[1]

## STANDARDS

### A. Motions to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). According to the Ninth Circuit, "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations

---

[1] In Keith's opposition to Butterfield's motion, Keith concedes that Butterfield should be given 14 days to answer all claims in the second amended complaint following the Court's ruling on the present motion. ECF 25 at 18. A majority of district courts that have addressed the issue have held that a motion to dismiss suspends the time to file an answer to all claims, including those not addressed by the motion to dismiss. *See, e.g.*, *ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 2011 WL 6296833, at *5 (D. Ariz. Dec. 16, 2011). Therefore, the Court grants Butterfield's motion to extend the time to answer the claim for correction of inventorship without further discussion.

that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In the case of a facial

attack on the allegations in a complaint, "both the trial and reviewing courts must accept as true

all material allegations of the complaint, and must construe the complaint in favor of the

complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see Savage v. Glendale Union

High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). When a

litigant brings a factual attack on the complaint, however, "[t]he court need not presume the

truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. "Once the moving party

has converted the motion to dismiss into a factual motion by presenting affidavits or other

evidence properly brought before the court, the party opposing the motion must furnish affidavits

or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."

*Savage*, 343 F.3d at 1039 n.2.

**B.  Motions to Dismiss for Failure to State a Claim**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for

failure to state a claim may be granted only when there is no cognizable legal theory to support

the claim or when the complaint lacks sufficient factual allegations to state a facially plausible

claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041

(9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must

accept as true all well-pleaded material facts alleged in the complaint and construe them in the

light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136,

1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To

be entitled to a presumption of truth, allegations in a complaint "may not simply recite the

elements of a cause of action, but must contain sufficient allegations of underlying facts to give

fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d

1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn

PAGE 3 – OPINION AND ORDER

in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Establishing the plausibility of a complaint's allegations is a two-step process." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014). At the first step, "a court should 'identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* at 996 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). At the second step, "a court should 'assume the[ ] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

Additionally, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Plaintiffs must offer "[s]omething more . . . such as facts tending to exclude the possibility that the alternative explanation is true, . . . in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Id.* A complaint will

survive a motion to dismiss where a plaintiff "offer[s] facts that tend[] to exclude the defendant's

innocuous alternative explanation." *Eclectic Props.*, 751 F.3d at 997. Moreover, if two

alternative explanations exist, "one advanced by defendant and the other advanced by plaintiff,

both of which are plausible, plaintiff's complaint survives a motion to dismiss under

Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible

alternative explanation is so convincing that plaintiff's explanation is implausible." *Id.* at 996

(quoting *Starr*, 652 F.3d at 1216).

## BACKGROUND

For the purposes of this motion to dismiss, the Court takes as true the following factual

allegations in Keith's second amended complaint. Keith manufactures and sells "reciprocating

floor conveyors" that are typically built into the floors of truck trailers. The conveyors have

reciprocating floor slats that move a trailer's load horizontally out of the back of the trailer. Keith

also manufactures and distributes accessory products such as floor-clean-out systems, known as

"moving headboards." A moving headboard will sweep clean a reciprocating floor conveyor

during the trailer unloading process.

Butterfield began working for Keith as a salesperson in 2004. At the time his

employment began, Butterfield executed a written employment contract (the "2004 Contract")

with Keith. The 2004 Contract specified that Oregon law would control the 2004 Contract's

interpretation. The 2004 Contract required, among other things, that Butterfield inform Keith of

any inventions Butterfield believed he had invented before or during his employment. According

to the 2004 Contract, Keith had a royalty-free safe harbor from suit if Keith used, in Keith's

business, any of Butterfield's pre-employment ideas. Additionally, the 2004 Contract gave Keith

a royalty-free right to use any design or business ideas that Butterfield developed during his

employment with Keith. Concerning any patentable inventions that Butterfield might develop

PAGE 5 – OPINION AND ORDER

during the regular course of his employment, the 2004 Contract granted Keith exclusive

ownership of those inventions. Finally, the 2004 Contract prohibited Butterfield from misusing

Keith's confidential information.

As part of his employment duties, Butterfield had direct contact with Keith's customers

concerning the installation of Keith's products. Butterfield also had access to information about

Keith's ongoing development of new products. One of the new products that Keith began

developing during Butterfield's employment was a "hard-backed," or non-flexible, moving

headboard that customers could use with heavy bulk materials, such as asphalt and rock. Keith's

existing flexible headboards were not effective at sweeping out trailers that contained these

heavier materials.

From 2007 to 2008, Keith developed early prototypes of hard-backed moving headboards

for its customer Travis Trailer and another customer in the United Kingdom. In April 2008, one

of Keith's engineers, Jim Drago, created engineering drawings for what later became Keith's

BSH-58 "Bulk Sweep" headboard and "V-Sweep" headboard. As a salesperson, Butterfield

knew about the development of these prototypes. In April 2008, Butterfield also received via

email a copy of Mr. Drago's V-Sweep drawings. The V-Sweep drawings were demarcated with a

proprietary notice, stating that the designs and ideas depicted in the drawings were Keith's

property and should not be used, disclosed, or copied without prior permission. In June 2008,

Butterfield received another email that contained photographs and a report concerning the trial of

Keith's new headboard products.

On August 1, 2008, without Keith's knowledge, Butterfield filed a patent application

with the United States Patent and Trademark Office ("PTO"). The application illustrated and

described a headboard design strikingly similar to the headboard design in Mr. Drago's V-Sweep

drawings. Butterfield claimed to be both the inventor and owner of the patent application. Also without Keith's knowledge, Butterfield began manufacturing and selling headboards to Keith's customers as part of a side business under the trademark "LoadBacker." These LoadBacker headboards were—like the headboard in Butterfield's patent application—substantially identical to the headboard design in the V-Sweep drawings.

Sometime in the months after Butterfield filed his patent application, Keith management learned of Butterfield's LoadBacker side business. Moreover, Keith management learned that Butterfield had applied for a patent on "a Keith-developed design." ECF 21 ¶ 39. In response to questions concerning the matter, Butterfield claimed that he had come up with the design idea long ago and had been operating the LoadBacker business for many years before his employment with Keith. Tension between Butterfield and Keith escalated. On May 29, 2009, Butterfield quit his job at Keith and went to work for Travis Trailer.

When Butterfield went to work for Travis Trailer, Travis Trailer asked him to discontinue his LoadBacker side business. Butterfield instead proposed that Travis Trailer carry the LoadBacker products as Travis Trailer products. Butterfield disclosed to Travis Trailer that he had sold 19 LoadBacker headboards as of June 6, 2009, and referenced the successful prototypes of hard-backed moving headboards that Keith had developed. Travis Trailer declined to become involved in Butterfield's LoadBacker project based on Butterfield's involvement in Keith's design work for Travis Trailer. Butterfield no longer works for Travis Trailer.

The PTO rejected Butterfield's patent application until he represented that his invention was novel because the headboard has a "floor tarp component" that flexes over the end of the trailer during the unloading process. Keith used this component in its 2007-2008 prototypes. Mr. Drago also depicted the component in the V-Sweep drawings sent to Butterfield. Based on

the representation about the floor tarp component, the PTO granted Butterfield's application on September 8, 2015, and formally issued to Butterfield the '520 patent.

On October 9, 2015, Butterfield sent a letter to Keith alleging that Keith produces a moving headboard that infringes the '520 patent. Butterfield demanded that Keith cease and desist from further marketing of the allegedly infringing headboard within ten business days. In response, on October 23, 2015, Keith filed the present lawsuit seeking, among other things, a declaratory judgment of non-infringement or invalidity of the '520 patent.

On May 16, 2016, Butterfield's attorney sent to Keith's attorneys a covenant not to sue (the "Covenant"). The preamble states that "Keith's advertisement and sale of its products . . . do not infringe and are not likely ever to infringe Butterfield's patent rights at a level sufficient to warrant the substantial time and expense of continued litigation." ECF 23-1 at 2. The Covenant continues, in relevant part:

> Butterfield for and on behalf of himself, his "LoadBacker" business, licensees, contract manufacturers, assigns and/or all other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, attorneys, representatives and employees of such entities hereby unconditionally and irrevocably covenants to refrain from making any claims(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against Keith or any of its parents, subsidiaries, divisions, related companies, affiliated companies, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, attorneys, representatives and employees of such entities, on account of any possible cause of action involving infringement of U.S. Patent No. 9,126,520 based on the manufacture, use, sale, offer for sale or importation of any Keith product, including without limitation the Keith BSH-58 "Bulk Sweep" product, any predecessor version thereof, any colorable imitation thereof, or any other prior or future Keith product, regardless of whether that product is manufactured, distributed, used, offered for sale, sold, imported or exported before or after the Effective Date of this Covenant.

*Id.*

PAGE 8 – OPINION AND ORDER

**DISCUSSION**

Butterfield moves to dismiss Keith's claims for declaratory judgment, breach of contract, and misappropriation of trade secrets. He argues that each of these claims should be dismissed for three alternative reasons: (1) the Covenant renders the claims moot and strips the Court of subject matter jurisdiction; (2) the relevant statutes of limitation bar the claims; and (3) the doctrine of laches bars the claims. The Court addresses the effect of Butterfield's arguments on each of Keith's claims in turn.

**A.  Keith's Claims for Declaratory Judgment**

Butterfield argues that the Covenant moots Keith's declaratory judgment claims. Therefore, argues Butterfield, the Court does not have subject matter jurisdiction over these claims.[2] Keith opposes the dismissal of its claims, arguing that Butterfield has not established that voluntary cessation has mooted the case. Keith argues, among other things, that its customers are still at risk of lawsuits that Butterfield could bring to enforce the '520 patent. In support of its argument, Keith presents a declaration from its president stating that although Keith sells moving headboards, it is not unusual for Keith's customers to build their own headboards for use with Keith's reciprocating conveyors.

**1.  General Principles Regarding When a Case Becomes Moot**

Under Article III of the U.S. Constitution, a court cannot decide a legal dispute or expound on the law in the absence of "a case or controversy." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). This "limitation requires those who invoke the power of a federal

---

[2] Butterfield's motion to dismiss for lack of subject matter jurisdiction is a factual attack on the second amended complaint, and the Court considers the text of the Covenant and the facts presented in sworn declarations submitted by the parties. Because Butterfield has converted the motion to dismiss these claims into a factual motion by submitting the Covenant, the burden shifts to Keith to prove subject matter jurisdiction. *See Savage*, 343 F.3d at 1039 n.2.

court to demonstrate standing—a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

Similarly, the Declaratory Judgment Act allows a district court, "[i]n a case of actual controversy," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The party seeking to invoke a court's jurisdiction under the Declaratory Judgment Act "bears the burden of establishing jurisdiction." *Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1277 (Fed. Cir. 2014). To meet that burden, a party must satisfy the court that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

For a court to have jurisdiction under both Article III and the Declaratory Judgment Act, an actual case or controversy must exist at all stages of litigation, not merely at the time the complaint is filed. *See id.* at 138; *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). A case becomes moot—and no longer amenable to judicial resolution—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). A defendant's voluntary cessation of the allegedly unlawful conduct can render a case moot. The defendant, however, must establish "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

A covenant not to sue may satisfy the voluntary cessation test and therefore moot a case, but the covenant must be "unconditional and irrevocable." *Already*, 133 S. Ct. at 728. The Second Circuit has articulated three additional factors for courts to consider when deciding if a covenant not to sue renders a case moot:

> (1) the language of the covenant, (2) whether the covenant covers future, as well as past, activity and products, and (3) evidence of intention or lack of intention, on the part of the party asserting jurisdiction, to engage in new activity or to develop new potentially infringing products that arguably are not covered by the covenant.

*Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011) (footnotes omitted), *aff'd*, 133 S. Ct. 721. The Supreme Court has endorsed the use of these factors in evaluating the effect of a covenant not to sue. *See Already*, 133 S. Ct. at 729.

According to the Federal Circuit, "Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). To eliminate a court's jurisdiction over a declaratory action, the covenant must generally "extend to future sales of the same product as was previously sold." *Id.* at 1298. Looking to Federal Circuit precedent, district courts routinely find that covenants not to sue moot declaratory judgment actions where "the covenants cover[] the current products whether they were produced and sold before or after the covenant." *Id.* at 1299-1300 (citing, among other cases, *True Ctr. Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*, 402 F. Supp. 2d 1093 (D. Ariz. 2005), and *In re Columbia Univ. Patent Litig.*, 343 F. Supp. 2d 35 (D. Mass. 2005)).

If a party has "engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights," even a "direct and unequivocal statement" of ***intent*** not to sue will not eliminate an actual controversy. *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372,

1382-83 (Fed. Cir. 2007). On the other hand, an enforceable, unconditional agreement "not to sue [the other party] for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by [the other party]" is sufficient to divest a court of jurisdiction over claims for non-infringement, invalidity, or unenforceability of patent rights. *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1056 (Fed. Cir.1995) (emphasis omitted), *abrogated on other grounds as recognized by Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346 (Fed. Cir. 2007).

### 2. The Covenant's Effect on Keith's Declaratory Judgment Claims

The Covenant is expressly "unconditional[] and irrevocabl[e]." ECF 23-1 at 2. It extends to "any Keith product, . . . any predecessor version thereof, any colorable imitation thereof, or any other prior or future Keith product, regardless of whether that product is manufactured, distributed, used, offered for sale, sold, imported or exported before or after the Effective Date of this Covenant." *Id.* The Covenant is not a mere expression of Butterfield's intent not to sue; rather, the Covenant is an enforceable, unqualified agreement "to refrain from making any claims(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against Keith." *Id.* The text of the Covenant establishes that it covers past and future activity and products. Furthermore, Keith does not assert intent to engage in new activity or to develop new potentially infringing products that arguably are outside the scope of the Covenant. The Covenant, therefore, satisfies the factors identified by the Second Circuit and approved of by the Supreme Court, as well as the criteria set out by the Federal Circuit, that establish when a covenant not to sue moots a controversy.

Keith nonetheless argues that the Covenant is inadequate to moot its controversy with Butterfield. Keith identifies four purported defects in the Covenant: (1) the Covenant leaves the door open for Butterfield to sue Keith's customers; (2) the Covenant fails to protect Keith from

Uniform Commercial Code ("UCC") claims brought by Keith's customers; (3) the Covenant fails to protect Keith or Keith's customers from future suits caused by continuations of the '520 patent; and (4) the Covenant does not adequately protect Keith if Butterfield later sells his patent rights to an entity that competes with Keith.

Keith's arguments are unavailing. Keith's first, second, and fourth arguments concern the Covenant's omission of Keith's customers and future owners of the '520 patent. The Declaratory Judgment Act allows a court to "declare the rights and other legal relations of ***any interested party*** seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Keith's current and future customers and Butterfield's potential successors are not parties to the case. Therefore, the possibility that Butterfield could assert a claim against a customer of Keith, that Keith's customers could in turn sue Keith, or that Butterfield's successors could refuse to honor the Covenant is "irrelevant to whether a controversy exists between" Keith and Butterfield in this case. *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1349 (Fed. Cir. 2010) (finding that covenant not to sue extinguished the controversy between the plaintiff and defendant despite the covenant's failure to include defendant's parent company and other "affiliates").

Additionally, in *Microchip Technology Inc. v. The Chamberlain Group, Inc.*, 441 F.3d 936 (Fed. Cir. 2006), the Federal Circuit held that the threat of a suit against a company's customers generally does not create an "adverse legal interest" that confers jurisdiction on a court. *Id.* at 942. It is insufficient for a declaratory action plaintiff simply to have "an economic interest in clarifying its customers' rights under [patents in suit]." *Id.* at 943. The plaintiff must show "a legal relationship" with "a customer that ha[s] a legal interest adverse to [the defendant], such as the existence of an indemnity agreement between [the plaintiff] and its customer." *Id.*

Keith does not assert that it has entered into any indemnification agreement with any particular customer. Keith points only to the UCC and cites Oregon Revised Statute ("ORS") § 72.3120 as evidence that Keith might have to indemnify customers.§§ 72.3120(3) provides: "Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like . . . ." A district court in the Central District of California has addressed a similar argument that UCC § 2-312(3)—which is substantively identical to ORS § 72.3120(3)—creates a sufficient underlying legal cause of action to support a declaratory action. *Allflex USA, Inc. v. Avid Identification Sys., Inc.*, 2008 WL 9475310 (C.D. Cal. Feb. 29, 2008). The court found that, despite the language of UCC § 2-312(3), when a company seeks a declaratory judgment of non-infringement based on potential suits against its customers:

> the legal interest at stake must be more particularized than that proffered; [the plaintiff] must point to specific legal liabilities it faces through its sales to particular customers (such as the identification of indemnity agreements with particular customers) for jurisdiction to remain based solely on the prospect that the patent holder may sue such customers. Section 2-312(3) does not operate as a[n] indemnification agreement, requiring [the plaintiff] to defend its customer in a suit brought against that customer by [a third-party]. *See* UCC § 2-607(5)(b). Instead, the section operates as a warranty of title and non-infringement between [the company] and its customer.

*Id.* at *7.

The decision in *Already* is not to the contrary. There, the Supreme Court found it significant that a covenant not to sue extended to the competitor's customers. *See* 133 S. Ct. at 728. The Supreme Court, however, did not condition its conclusion that the covenant mooted the case on the fact that the covenant extended to all customers. Other courts that have expressly considered the issue have found that even if a covenant does not extend to a company's customers, the covenant still divests a court of jurisdiction over a declaratory action when the

covenant extends to future products. *See, e.g.*, *Beavers v. Riley Built, Inc.*, 2016 WL 1030148, at *3 (W.D. Ky. Mar. 10, 2016); *Carfax, Inc. v. Red Mountain Techs., LLC*, 119 F. Supp. 3d 431, 433 (E.D. Va. 2015). Keith has not presented evidence that it has a legal relationship with a customer that has a legal cause of action against Butterfield. Therefore, the Court, persuaded by the reasoning of the decisions discussed above, concludes that the mere possibility of a suit against a customer does not render the Covenant insufficient or establish subject matter jurisdiction.

Furthermore, as to Butterfield's successors, the Covenant expressly extends to any entities related to Butterfield and that might own the '520 patent after him. Keith's arguments that possible future owners of the '520 patent will ignore the terms of the Covenant are "too speculative" to confer jurisdiction on the Court. *See Super Sack*, 57 F.3d at 1060. What Butterfield's successors might do in the future is the sort of "'conjectural or hypothetical' speculation [that] does not give rise to the . . . 'concrete' and 'actual' injury necessary to establish Article III standing." *Already*, 133 S. Ct. at 730 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Here, the Covenant's unconditional, irrevocable text, extending to past, present, and future Keith products, eliminates the actual controversy in this case, despite the possibility that Butterfield's successors could violate the Covenant.

Finally, as to Keith's third argument regarding continuations of the '520 patent, the covenant need not mention future continuation patents because future patents, including pending patents, cannot form the basis of an infringement claim. *See GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 482 (Fed. Cir. 1996) (holding "that a threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed"). In sum, none of the deficiencies identified by Keith is substantial. Keith's

only legally cognizable injury in its declaratory judgment claims—the fact that Butterfield took steps to enforce his patent—is now gone and, given the breadth of the covenant, cannot reasonably be expected to recur. The Covenant divests the Court of jurisdiction over the declaratory actions in this case. Therefore, the Court dismisses these claims.

## B.  Keith's Breach of Contract Claims

Keith brings three claims for breach of contract. Keith alleges that Butterfield breached the 2004 Contract by: (1) claiming to own patent rights on a design that was developed using Keith's time, materials, and facilities; (2) unilaterally filing a patent application on a design that was developed using Keith's time, materials, and facilities; and (3) threatening Keith with a patent infringement action on a patent that Keith owns or has a royalty-free right to use pursuant to specifically stated terms of the 2004 Contract. Butterfield argues that the Covenant moots the third claim concerning the threat of a patent infringement action. He also argues that all three claims are barred by the relevant statute of limitations and the doctrine of laches.

### 1.  The Covenant's Effect on Keith's Third Breach of Contract Claim

Oregon's substantive law governs Keith's state law claims. *See Getlin v. Md. Cas. Co.*, 196 F.2d 249, 250 (9th Cir. 1952). Under Oregon law, "[a] cause of action for breach of contract accrues when the contract is breached." *Kantor v. Boise Cascade Corp.*, 75 Or. App. 698, 703 (1985). A breach occurs at the time of "nonperformance of a duty due under a contract." *Id.* "As soon as a party to a contract breaks any promise he has made, he is liable to an action. In such an action the plaintiff will recover whatever damages the breach has caused." *Hollin v. Libby, McNeill & Libby*, 253 Or. 8, 13 (1969) (quoting *Weaver v. Williams*, 211 Or. 668, 676 (1957)).

According to Butterfield, the Covenant extinguished any threat of a patent infringement action, and therefore, for the same reasons as Keith's declaratory judgment actions, the third claim for breach of contract should be dismissed as moot. The alleged breach of contract,

PAGE 16 – OPINION AND ORDER

however, occurred at the time of Butterfield's alleged non-performance of his duty under the 2004 Contract in October 2015. At that time, Butterfield, in violation of the express terms of the 2004 Contract, allegedly threatened Keith with a patent infringement action on a patent that Keith owns or has a royalty-free right to use. Under Oregon law, as soon as Butterfield committed the breach, he was liable for breach of contract. His later change of heart does not alter his liability for any damages that Keith sustained as a result of the breach. Butterfield's agreement not to sue may be relevant to the damages calculation, but the Covenant does not moot Keith's breach of contract action.

### 2.   The Effect of the Relevant Statute of Limitations on Keith's Claims

ORS § 12.080(1) requires, in relevant part, that any "action upon a contract or liability, express or implied, . . . shall be commenced within six years." This statute of limitations "is not subject to a discovery rule," *Waxman v. Waxman & Associates, Inc.*, 224 Or. App. 499, 510 (2008), meaning that the six-year limitation period "runs from the date of breach" regardless of when the plaintiff discovers the breach, *id.* at 512. "The one exception to that rule applies in cases of fraudulent concealment." *Id.* Fraudulent concealment occurs when someone "wrongfully conceals material facts and thereby prevents discovery of his wrong or of the fact that a cause of action has accrued against him." *Chaney v. Fields Chevrolet Co.*, 264 Or. 21, 27 (1972) (quoting *What Constitutes Concealment which Will Prevent Running of Statute of Limitations*, 173 A.L.R. 576 at 578 (1948)). In cases of fraudulent concealment, "the statute of limitations will be tolled until the plaintiff discovered, or reasonably should have discovered, the breach." *Waxman*, 224 Or. App. at 512.

A court may not grant a motion to dismiss based on the running of a statute of limitations unless "the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*,

PAGE 17 – OPINION AND ORDER

68 F.3d 1204, 1206 (9th Cir. 1995) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)); *see also U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) ("A claim may be dismissed as untimely pursuant to a 12(b)(6) motion "'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" (alteration in original) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)). Additionally, "[w]hen ruling on a motion to dismiss," a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### a. First and Second Claims for Breach of Contract

In its first claim for breach of contract, Keith alleges that Butterfield breached the 2004 Contract by claiming to own patent rights on a design that was developed using Keith's time, materials, and facilities. Keith's second claim for breach of contract is similar: Keith alleges that Butterfield breached the 2004 Contract by unilaterally filing a patent application on a design that was developed using Keith's time, materials, and facilities. By Keith's own admission, Butterfield filed his patent application on August 1, 2008, more than six years before Keith filed this lawsuit. ECF 21 ¶ 35. Keith does not expressly allege that Butterfield fraudulently concealed the fact that he had filed a patent application. In fact, according to Keith, in "the months that followed" the filing of Butterfield's patent application, "Keith management . . . learned that Butterfield had made his own patent filing on a Keith-developed design." *Id.* ¶ 39. Keith does allege, however, that Butterfield represented that he based his patent application on a design that "was his idea from years earlier." *Id.* ¶ 41.

Keith argues that when construed in the light most favorable to Keith, the second amended complaint plausibly states a claim for relief based on Keith's first and second theories

of breach of contract. Keith argues that the first claim for breach of contract is based not on Butterfield's patent application but on Butterfield's assertion of patent rights after the PTO granted his patent application in September 2015. According to Keith, Butterfield had no patent rights to claim until the PTO determined that he was entitled to a patent under law. Additionally, Keith argues that no one could have known the scope of Butterfield's claimed patent rights, and whether these rights were based on a design developed using Keith's time, materials, and facilities, until the patent defined the scope of the invention. *See PSC Computer Products, Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1358 (Fed. Cir. 2004) ("One important purpose of the written description is to provide notice to the public as to the subject matter of the patent, while the claim provides notice as to the scope of the invention."). The Court must construe Keith's pleading in the light most favorable to Keith, the non-moving party. *See Knievel*, 393 F.3d at 1072. The Court, therefore, construes the first breach of contract claim in Keith's favor, interpreting the claim as one based on Butterfield's actions following the issuance of the '520 patent in September 2015. Thus, this claim is not barred by the six-year statute of limitations.

Regarding Keith's second breach of contract claim, Keith argues that during Butterfield's employment, Keith knew that Butterfield had filed a patent application. According to Keith, however, Keith did not know that the filing was based on a design that was developed ***using Keith's time, materials, and facilities***. According to Keith, Butterfield's representation that he developed the design years earlier prevented Keith from learning the true nature of Butterfield's patent filing. The allegation that Butterfield denied using Keith's time, materials, and facilities to develop his own product could permit Keith to prove fraudulent concealment. Fraudulent concealment tolls the six-year statute of limitations. Accordingly, the Court finds, at least for

PAGE 19 – OPINION AND ORDER

purposes of this motion to dismiss, that the relevant statute of limitations does not bar Keith's

second claim for breach of contract.[3]

### b. Third Claim for Breach of Contract

In Keith's third claim for breach of contract, Keith alleges that Butterfield breached the

2004 Contract by threatening Keith with a patent infringement action on a patent that Keith owns

or has a royalty-free right to use. Keith alleges that these threats took place in October 2015, well

within the six-year period of limitation. Butterfield responds only that this claim is not ripe for

adjudication based on the Covenant. As discussed above, Butterfield's liability for breach of

contract accrued at the time of the alleged breach when he sent a demand letter on

---

[3] Alternatively, both parties submit factual evidence outside the pleadings in support of their positions, and the Court could construe Butterfield's motion to dismiss based on the statute of limitations as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Butterfield presents his own sworn declaration that on July 3, 2008, he informed Keith via email that he was moving forward with a patent application for a "moving headboard" design. Butterfield Decl., ECF 28 ¶ 2. He also submits a copy of the email. ECF 28-1 at 2. Butterfield argues that this email establishes that he never sought to conceal the contents of his patent application. The email does not, however, disclose the nature of the headboard design. Moreover, according to Keith's president in his own sworn declaration, Keith did not and could not have discovered how Butterfield used Keith's confidential information until February 2010. At that time, the PTO published Keith's patent application, allowing Keith to see, for the first time, what information Butterfield was using to develop his own products. Foster Decl., ECF 25-1 at 6.

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Viewing the evidence in the light most favorable to Keith, the non-moving party, the Court concludes that a genuine issue of material fact exists as to whether Butterfield attempted to mislead Keith about the nature of his patent application and thus fraudulently concealed his alleged breach of contract. Therefore, if the Court construes Butterfield's motion as one for summary judgment, the outcome would be the same on this issue: there is a genuine dispute of material fact concerning whether the statute of limitations bars Keith's first and second claims for breach of contract, and the motion is denied.

October 9, 2015. The Covenant does not moot this claim, nor does the six-year statute of limitations bar it.

### 3.  Butterfield's Laches Argument

Butterfield also argues that all three of Keith's breach of contract claims should be dismissed based on the doctrine of laches. "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (citations and quotation marks omitted). The doctrine of laches will prevent a party from bringing an equitable claim if the party (1) has actual or inquiry notice of a claim; (2) unreasonably delays in bringing the claim; and (3) causes "substantial prejudice" to the defendant. *Hilterbrand v. Carter*, 175 Or. App. 335, 342-43 (2001). "Inquiry notice" exists when the plaintiff "had knowledge of facts which would have put a duty to inquire on a person of ordinary intelligence." *Nyman v. City of Eugene*, 32 Or. App. 307, 320 (1978).

Butterfiled first argues that the doctrine of laches is applicable because the breach of contract claim can be viewed as an action at equity based on Keith's request for significant equitable relief. Specifically, Keith requests an order that Keith owns or may use the rights claimed in the '520 patent. Butterfield next argues that the doctrine of laches bars the breach of contract claims based on the Keith's long delay in asserting the claims and Butterfield's representation that the relief Keith seeks would unjustly devalue Butterfield's investment in his intellectual property. To the extent this motion could be considered a motion for summary judgment, Butterfield asks the Court to consider the public record of a previously dismissed suit by Keith against Butterfield and a 2010 settlement letter.

Keith responds that if this is a summary judgment motion, as the motion appears to be, Keith requires more time for discovery, including Butterfield's deposition. Additionally, Keith

PAGE 21 – OPINION AND ORDER

argues that neither the face of the complaint nor any evidence submitted by Butterfield supports his assertion that he has suffered substantial prejudice from Keith's actions. Furthermore, Keith argues that Butterfield may not seek equitable relief because he does not "come[] into equity . . . with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). The Court agrees that this issue is more appropriately addressed at summary judgment or trial ***after*** the parties have had adequate time for discovery. *See* Fed. R. Civ. P 56(d). Therefore, the Court denies Butterfield's motion to dismiss Keith's breach of contract claims and declines to treat it as a motion for summary judgment.

### C.  Keith's Trade Secrets Claim

Butterfield argues that Keith's claim for misappropriation of trade secrets is barred by both the relevant statute of limitations and the doctrine of laches. The statute of limitations for a claim of trade secrets misappropriation is three years. ORS § 646.471. Unlike an action for breach of contract, a claim of trade secrets misappropriation is subject to the discovery rule and runs three years from when the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." *Id.* A question concerning "when defendant's alleged misconduct would have been discoverable by reasonable diligence . . . usually raises an issue of fact." *Stevens v. Bispham*, 316 Or. 221, 246 (1993); *see also Forest Grove Brick Works, Inc. v. Strickland*, 277 Or. 81, 87 (1977) ("We cannot say, based upon the record before us, that plaintiff's reliance on defendants' explanations of the [alleged wrongdoing] was entirely misplaced or unreasonable; therefore, an issue of fact remains as to when the period of limitation began." (footnote omitted)). Additionally, in Oregon, "[f]raudulent concealment has been recognized . . . as tolling the applicable statute of limitations." *Id.* at 87 n.7.

Keith alleges:

> While Butterfield was a Keith employee, and without Keith's
> consent, Butterfield misused [Keith's confidential information] to
> create his own independently-operated business, on the side, that
> targeted Keith customers who were interested in purchasing or
> using reciprocating floor conveyors to haul asphalt and other bulk
> materials.

ECF 21 ¶ 78. This confidential information consisted of "design ideas, proprietary drawings,

solutions to engineering problems, information relating to testing of products, and information

concerning potential customers who would be interested in switching to reciprocating floor

systems designed to haul asphalt." *Id.* ¶ 77. Keith also alleges that "[d]uring the months that

followed" the filing of Butterfield's patent application and a trademark application for

"LoadBacker" in August and September 2008, respectively, "Keith management became aware

that Butterfield was running a side business, in competition with Keith, while also working as a

fulltime Keith employee. Keith management also learned that Butterfield had made his own

patent filing on a Keith-developed design." *Id.* ¶ 39. Keith further alleges that "[i]n May 2009,

Keith was expressing dismay about the above events, [which include Butterfield running his side

business]." *Id.* ¶ 40. Butterfield told Keith, however, that the design on which he based his

business was "his idea from years earlier." *Id.* ¶ 41. He also told Keith that he had "not started

any new business" but had "only used a[n] existing company name of many years." *Id.* ¶ 43.

Butterfield's representations about LoadBacker could have prevented Keith from learning

whether Butterfield used Keith's confidential information to develop his own business.[4] As the

---

[4] At oral argument on August 1, 2016, Butterfield asked the Court to take judicial notice of a lawsuit against Butterfield that Keith filed in 2010. *See* ECF 23-3. In the complaint in that case, Keith alleged that Butterfield had misappropriated Keith's trade secrets. Although Keith voluntarily dismissed that case, Butterfield argues that the lawsuit shows that Keith discovered the misappropriation of trade secrets alleged in this case, or at least misappropriation of related trade secrets, by at least 2010, in which case the statute of limitations would have run in 2013. *See Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1026 (2000) ("The unanimous conclusion of courts considering the issue—i.e., from federal courts construing [the Uniform Trade Secrets Act, which both Oregon and California have adopted]—is that it is the first

Court states above, "[w]hen ruling on a motion to dismiss," a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel*, 393 F.3d at 1072. Construing the pleading in the light most favorable to Keith, the Court finds that Keith may have been unable to discover Butterfield's alleged misappropriation until sometime within the three-year statute of limitations. Keith's inability to discover the misappropriation may have resulted from Butterfield's fraudulent concealment of when he developed the patent design and Loadbacker business. Butterfield is free to present factual evidence to the contrary at summary judgment or trial. Similarly, for the same reasons as discussed in the context of Keith's breach of contract claims, Butterfield's laches argument is more appropriately addressed after the parties have had adequate time for discovery. *See* Fed. R. Civ. P 56(d). The Court, therefore, denies Butterfield's motion to dismiss Keith's claim for misappropriation of trade secrets.

## CONCLUSION

Butterfield's motions (ECF 22) are GRANTED IN PART AND DENIED IN PART. The motion to dismiss is granted with respect to Keith's declaratory judgment claims, and these claims are dismissed. The motion to dismiss is denied with respect to Keith's claims for breach of contract and misappropriation of trade secrets. Butterfield's motion to extend time to answer

---

discovered (or discoverable) misappropriation of a trade secret which commences the limitation period."). Butterfield described the 2010 complaint in his briefing but did not ask the Court to take judicial notice of the 2010 case until oral argument. Additionally, at oral argument, Butterfield acknowledged that fraudulent concealment could toll the statute of limitations if Butterfield took steps, at any point, to mislead Keith into thinking that it did not have a claim for misappropriation of trade secrets. For these reasons and those stated above, the Court finds that there remain factual issues concerning fraudulent concealment and when Butterfield's alleged misconduct could have been discoverable by reasonable diligence. These issues are more appropriately addressed, after any necessary discovery, at summary judgment or trial.

is granted. Butterfield shall answer Keith's remaining claims within 14 days of the entry of this

Opinion and Order.

**IT IS SO ORDERED**.

DATED this 2nd day of August, 2016.

_/s/ Michael H. Simon _____
Michael H. Simon
United States District Judge